[NOT YET SCHEDULED FOR ORAL ARGUMENT]

**IN THE UNITED STATES COURT OF APPEALS
FOR THE DISTRICT OF COLUMBIA CIRCUIT**
_____

**No. 12-5267**
_____

**VERN McKINLEY**

**Plaintiff-Appellant,**

**v.**

**FEDERAL HOUSING FINANCE AGENCY**

**Defendant-Appellee.**
_____

**ON APPEAL FROM THE U.S. DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**
_____

**BRIEF OF APPELLANT VERN McKINLEY**
_____

Michael Bekesha
JUDICIAL WATCH, INC.
425 Third Street, S.W., Suite 800
Washington, DC  20024
(202) 646-5172

*Counsel for Plaintiff-Appellant*

## CERTIFICATE AS TO PARTIES, RULINGS,
## AND RELATED CASES

Pursuant to Cir. R. 28(a)(1), counsel provides the following information as to parties, rulings, and related cases:

**(A)   Parties and Amici**

The following parties, interveners, and amici curiae appeared, or sought to appear, below:

Plaintiff:                          Vern McKinley

Defendant:                     Federal Housing Finance Agency

The following parties, interveners, and amici curiae are before this Court on appeal:

Plaintiff-Appellant:        Vern McKinley

Defendant-Appellee:       Federal Housing Finance Agency

**(B)   Ruling under Review**

The ruling under review is the Order of the United States District Court for the District of Columbia (Rothstein, J.) issued on June 27, 2012.   The ruling can be found at Joint Appendix, page 27.

**(C)   Related Cases**

Plaintiff-Appellant does not believe that there are any related cases within the meaning of Cir. R. 28(a)(1)(C).

/s/ Michael Bekesha

## TABLE OF CONTENTS

TABLE OF CONTENTS........................................................................................i

TABLE OF AUTHORITIES ............................................................................. iii

GLOSSARY OF ABBREVIATIONS .................................................................v

JURISDICTIONAL STATEMENT ...................................................................1

STATEMENT OF THE ISSUE PRESENTED ..................................................1

RELEVANT STATUTE.....................................................................................1

STATEMENT OF THE CASE...........................................................................2

STATEMENT OF FACTS .................................................................................3

     I.     Background on the FOIA Requester ....................................3

     II.    FHFA Placed Fannie Mae and Freddie Mac
            into Conservatorship .........................................................4

     III.   McKinley's FOIA Request to FHFA ...................................6

     IV.   The Contents of the Disclosed Information .........................7

     V.    Motion for an Award of Attorneys' Fees
            and Other Litigation Costs .................................................9

SUMMARY OF THE ARGUMENT ..................................................................9

ARGUMENT ...................................................................................................10

     I.     Standard of Review ...........................................................10

     II.    McKinley Is Eligible for and Entitled to
            an Award of Attorneys' Fees and Other Litigation Costs...................11

A.    McKinley is eligible for an award of
      attorneys' fees and other litigation costs...................................11

B.    McKinley is entitled to an award of
      attorneys' fees and other litigation costs...................................14

CONCLUSION ...................................................................................19

CERTIFICATE OF COMPLIANCE.....................................................21

# TABLE OF AUTHORITIES

## CASES

*Blue v. Bureau of Prisons*, 570 F.2d 529 (5th Cir. 1978) ................................. 14-15

\* *Brayton v. Office of the U.S. Trade Representative*,
    641 F.3d 521 (D.C. Cir. 2011) ....................................................10, 11, 12, 13

*Burka v. U.S. Department of Health & Human Services*,
    142 F.3d 1286 (D.C. Cir. 1998) ...................................................................14

*Cotton v. Heyman,* 63 F.3d 1115 (D.C. Cir. 1995)....................................14, 15, 17

*Cuneo v. Rumsfeld*, 553 F.2d 1360 (D.C. Cir. 1977) .............................................19

\* *Davy v. Central Intelligence Agency*,
    550 F.3d 1155 (D.C. Cir. 2008) ..................................................14, 17, 18, 19

\* *Edmonds v. Federal Bureau of Investigation*,
    417 F.3d 1319 (D.C. Cir. 2005) ......................................................11, 12, 13

*LaSalle Extension University v. Federal Trade Commission*,
    627 F.2d 481(D.C. Cir. 1980) .....................................................................11

*McKinley v. Federal Housing Finance Agency*,
    789 F. Supp. 2d 85 (D.D.C. 2011) ...........................................................6, 7

*Oil, Chemical and Atomic Workers International
    Union v. Department of Energy*,
    288 F.3d 452 (D.C. Cir. 2002) ...................................................................11

## STATUTES

5 U.S.C. § 552(a)(4)(B) ...........................................................................................1

5 U.S.C. § 552(a)(4)(E) ........................................................................................ 1-2

\* Authorities upon which Plaintiff-Appellant chiefly relies are marked with asterisks.

5 U.S.C. § 552(a)(4)(E)(ii)(II) .................................................................12

28 U.S.C. § 1291 ....................................................................................1

28 U.S.C. § 1331 ....................................................................................1

**MISCELLANEOUS**

David S. Hilzenrath, *Shares of Fannie Mae, Freddie Mac Plummet: Report Raises Alarm About Firms' Capital*, Washington Post, July 8, 2008 (available at http://alturl.com/8bdid) ..........................................4

Henry M. Paulson, *On the Brink: Inside the Race to Stop the Collapse of the Global Financial System*, 142 (2010) ...................................4

Vern McKinley, *The Fannie Mae 'Wind Down' That Isn't*, The Wall Street Journal, Nov. 19, 2012 (available at http://alturl.com/9vbov) .............................................................4, 5

# GLOSSARY OF ABBREVIATIONS

| | |
|---|---|
| The District Court | The U.S. District Court for the District of Columbia |
| Fees Order | Order by U.S. District Judge Barbara J. Rothstein Denying Motion for Attorneys' Fees and Costs, dated June 27, 2012 |
| Fannie Mae | Federal National Mortgage Association |
| FHFA | Federal Housing Finance Agency |
| Freddie Mac | Federal Home Loan Mortgage Corporation |
| FOIA | Freedom of Information Act |
| JA | Joint Appendix |
| McKinley | Plaintiff-Appellant Vern McKinley |

## JURISDICTIONAL STATEMENT

Jurisdiction in the U.S. District Court for the District of Columbia ("the District Court") was based upon the Freedom of Information Act, 5 U.S.C. § 552(a)(4)(B), and 28 U.S.C. § 1331. This Court has jurisdiction over this appeal pursuant to 28 U.S.C. § 1291. This appeal is timely because the District Court entered its final judgment on June 27, 2012 (Joint Appendix ("JA") 55), and pursuant to Fed. R. App. 4(a)(1)(B), a timely notice of appeal was filed on August 20, 2012. JA 33.

## STATEMENT OF THE ISSUE PRESENTED

Whether the District Court abused its discretion by finding that an average person was not eligible for or entitled to an award of attorneys' fees and other litigation costs even though the District Court ordered the production of records, the public benefited from their release, and the records were sought for academic, not commercial interests.

## RELEVANT STATUTE

**5 U.S.C. § 552(a)(4)(E):**

(i)     The court may assess against the United States reasonable attorney fees and other litigation costs reasonably incurred in any case under this section in which the complainant has substantially prevailed.

1

(ii)    For purposes of this subparagraph, a complainant has substantially prevailed

if the complainant has obtained relief through either–

(I) a judicial order, or an enforceable written agreement or consent decree; or

(II) a voluntary or unilateral change in position by the agency, if the

complainant's claim is not insubstantial.

**STATEMENT OF THE CASE**

At issue in this appeal is whether an average person who successfully shed

light on how the government made one of the most costly and important financial

decisions of the last decade is eligible for and entitled to an award of attorneys'

fees and other litigation costs.  Vern McKinley, through the Freedom of

Information Act ("FOIA"), sought to obtain all non-exempt records concerning the

government's decision to place the Federal National Mortgage Association

("Fannie Mae") and the Federal Home Loan Mortgage Corporation ("Freddie

Mac") into conservatorship.  By litigating the instant matter and compelling the

Federal Housing Finance Agency ("FHFA") to produce records that added to the

fund of information available to the public, McKinley is eligible for and entitled to

an award of attorneys' fees and other litigation costs.

In response to McKinley's FOIA request, FHFA located three records

responsive to McKinley's request.  FHFA withheld all three records in their

entirety pursuant to the attorney work product doctrine and deliberative-process

2

privilege.  After the parties briefed the issue, the District Court ordered FHFA to conduct a segregability analysis and produce all non-exempt information to McKinley.  Yet the District Court decided that McKinley was not eligible for and entitled to an award of attorneys' fees and other litigation costs.

## STATEMENT OF FACTS

### I.     Background on the FOIA Requester.

Vern McKinley is a former employee of the Board of Governors of the Federal Reserve, the Federal Deposit Insurance Corporation, the Resolution Trust Corporation, and the Office of Thrift Supervision.  Declaration of Michael Bekesha ("Bekesha Decl.") at ¶ 2, attached as Exhibit 1 to Plaintiff's Motion for an Award of Attorneys' Fees and Other Litigation Costs (JA 21).  Since 1999, he has served as a consultant, legal advisor and regulatory policy expert on financial sector issues for governments in the United States, China, Nigeria, Indonesia, Ukraine, Kazakhstan, Latvia, the Philippines, Yugoslavia (now Montenegro), Kenya, Eastern Caribbean Currency Union, Belarus, Morocco, Sudan, Libya, Afghanistan, Armenia, Kosovo, and Tajikistan.  *Id.* at ¶ 3 (JA 21).

In addition, McKinley is a Research Fellow at the Independent Institute and author of *Financing Failure: A Century of Bailouts*.  *Id.* at ¶ 4 (JA 21).  He also wrote an article entitled *Financing Fannie and Freddie's Failures*, which was published in *The Hill*.  *Id.* at ¶ 5 (JA 21-22).  Moreover, in February 2012, he was

interviewed on MSNBC's *Dylan Ratigan Show* where he discussed the distinction between Defendant placing Fannie Mae and Freddie Mac in conservatorship as opposed to receivership. *Id*. at ¶ 6 (JA 22). Most recently, McKinley had an article published in the *Wall Street Journal* concerning Fannie Mae and Freddie Mac.[1]

McKinley also has worked closely with Judicial Watch, a not-for-profit, educational foundation, in litigating four FOIA lawsuits as well as making numerous other FOIA requests for information about the financial crisis of 2008. Bekesha Decl. at ¶ 7 (JA 22). Finally, all of the records received by McKinley under FOIA have been made available to the public on *Scribd*. *Id*. at ¶ 8 (JA 22).

## II.     FHFA Placed Fannie Mae and Freddie Mac into Conservatorship.

In July 2008, a report prepared by Lehman Brothers estimated that Fannie Mae and Freddie Mac might need as much as $75 billion in additional capital to avoid a financial collapse.[2] The stock of both Fannie Mae and Freddie Mac fell by nearly 20 percent in one day.[3] To address the advanced stage of Fannie Mae's and

---

[1]     Vern McKinley, *The Fannie Mae 'Wind Down' That Isn't*, The Wall Street Journal, Nov. 19, 2012 (available at http://alturl.com/9vbov).

[2]     David S. Hilzenrath, *Shares of Fannie Mae, Freddie Mac Plummet: Report Raises Alarm About Firms' Capital*, Washington Post, July 8, 2008 (available at http://alturl.com/8bdid).

[3]     *Id*.; *see also*, Henry M. Paulson, *On the Brink: Inside the Race to Stop the*

Freddie Mac's capital problems in September 2008, the two primary options available to the federal government were for FHFA to place Fannie Mae and Freddie Mac into either conservatorship or receivership. Conservatorship is a process designed to restore a weak financial institution to sound financial health while preserving and conserving assets. Receivership entails a liquidation of the institution through the sale of assets and payment of claimants.

Henry M. Paulson, then-Secretary of the Department of the Treasury, initially concluded that the best option for Fannie Mae and Freddie Mac would be to have FHFA place them into receivership. This would have allowed for a downsizing of Fannie Mae and Freddie Mac and for addressing their long-term position in the market. According to then-Secretary Paulson, FHFA ultimately placed Fannie Mae and Freddie Mac into conservatorship because it allowed for a rapidly implemented "time out" not unlike Chapter 11 bankruptcy, so that Fannie Mae and Freddie Mac could avoid defaulting on their debts.[4]

Once the decision was made to place Fannie Mae and Freddie Mac into conservatorship, Ben S. Bernanke, Chairman of the Board of Governors of the Federal Reserve System, described "the catastrophe that would occur if we did not

---

*Collapse of the Global Financial System*, 142 (2010).

[4]      *Id*. at 162 – 166.

take these actions" in a meeting with the boards of Fannie Mae and Freddie Mac.[5]

No other information about the decision or this alleged catastrophe scenario has

been disclosed.  Therefore, McKinley submitted a FOIA request to FHFA to obtain

additional information about the decision of FHFA to place Fannie Mae and

Freddie Mac into conservatorship.

### III.    McKinley's FOIA Request to FHFA.

McKinley sent a FOIA request to FHFA seeking:

> Any and all communications and records concerning or
> relating to the assessment of an adverse impact on
> systemic risk in addressing Fannie Mae and Freddie Mac,
> and in particular how the FHFA and the Department of
> the Treasury determined that conservatorship was the
> preferred option to avoid any systemic risk of placing
> Fannie Mae and Freddie Mac into receivership.

*McKinley v. Federal Housing Finance Agency*, 789 F. Supp. 2d 85, 87 (D.D.C.

2011).  FHFA failed to respond to McKinley's FOIA request within the statutorily

allotted time period, and McKinley filed suit.  Complaint at ¶ 12 (JA 7); Answer at

¶ 12 (JA 11).  Subsequently, FHFA notified McKinley that it had located three

records responsive to McKinley's FOIA request and that each record was being

withheld in its entirety.  *McKinley*, 789 F. Supp. 2d at 87.  Upon reviewing the

declarations and *Vaughn* Index submitted by FHFA in support of its Motion for

---

[5]      *Id.* at 162.

Summary Judgment, McKinley challenged FHFA's withholding of Document

Numbers 2 and 3 in FHFA's *Vaughn* Index.  *Id.*

FHFA filed a summary judgment motion in which it claimed that Document

Numbers 2 and 3 were being properly withheld under the attorney work product

doctrine and the deliberative-process privilege.  *Id.* at 87-88.  McKinley opposed

FHFA's motion asserting that FHFA was improperly withholding the two records

in their entirety under the attorney work product doctrine or deliberative-process

privilege.  *Id.*

Following an *in camera* inspection of Document Numbers 2 and 3, the

District Court held that Document Numbers 2 and 3 were being improperly

withheld under the attorney work product doctrine and ordered FHFA to disclose

to McKinley any portions of these documents that were "reasonably segregable

from the material therein that is protected by the deliberative-process privilege."

August 26, 2011 Order at 4 (JA 17).  Subsequently, pursuant to the court's order,

FHFA "performed a segregability analysis and released to Plaintiff all reasonably

segregable non-privileged information from the two contested documents."

September 16, 2011 Joint Status Report at 1 (JA 18).

**IV.    The Contents of the Disclosed Information.**

Document Number 2 is a comparison chart that "presents the potential

policy impacts and practical effects of imposing a consent order or a

conservatorship on" Fannie Mae and Freddie Mac.  August 26, 2011 Order at 2

(JA 15).  Besides the revelation that the government did in fact conduct an analysis

before making this significant decision, the produced portions of Document 2

revealed what factors the government analyzed when making its decision.  For

example, the previously withheld portions of Document Number 2 reveal that

FHFA based its decision on the "unsafe and unsound practices" ground.  In

addition, it is of great interest that one of the factors the government weighed when

deciding how to prevent a financial catastrophe was "public perception."

Similarly, another portion of the record produced pursuant to the Court's August

26, 2011 Order reveals that the government thought the receivership option would

be "Labor Intensive."  Although the entire record was not produced, the produced

portions clearly shed light on how the government made one of the most important

and costly financial decisions of the last decade.

        Similarly, Document Number 3 is a memorandum that lays out in detail the

"various policy, operational, and logistical considerations" the government

considered in determining whether to impose either a conservatorship or a

receivership on Fannie Mae and Freddie Mac.  August 26, 2011 Order at 3 (JA 16).

The memorandum reveals the government's analysis of the issue approximately

three weeks before Fannie Mae and Freddie Mac were placed in conservatorship.

Again, although not all of the record was produced, the portions that were

8

produced clearly add to the public's knowledge about the government's handling of a potentially catastrophic financial situation.  In addition, the produced material was disseminated to the public and helped fulfill McKinley's general objective to uncover previously undisclosed information and educate the public concerning the government's handling of the financial crisis of 2008.

**V.      Motion for an Award of Attorneys' Fees
           and Other Litigation Costs.**

McKinley subsequently moved for an award of attorneys' fees and other litigation costs.  Fees Order at 1, 6 (JA 34, 39).  The District Court concluded that McKinley was probably not eligible for an award of attorneys' fees and other litigation costs and found that he was not entitled to such an award.  *Id.*  In reaching its decision, the court failed to apply well-established precedent of this Circuit.  This appeal followed.

## SUMMARY OF THE ARGUMENT

The District Court determined that McKinley was not eligible for or entitled to an award of attorneys' fees and other litigation costs.  In doing so, the court abused its discretion by ignoring well-established precedent of this Circuit.

The District Court was required to first determine whether McKinley was eligible for an award of fees.  The court did not do so.  To the extent that the court determined that McKinley was not eligible for an award because he had not "substantially prevailed," the court failed to apply the correct legal standard.  The

9

District Court undoubtedly ordered FHFA to conduct a segregability analysis and produce additional information to McKinley; therefore, McKinley is eligible for an award of fees.

The District Court also incorrectly applied the legal standard concerning McKinley's entitlement to an award of fees.  McKinley demonstrated that the public benefited from the litigation and that he requested the records for academic, not commercial interests.   The record clearly shows that the information produced pursuant to the court's order added to the fund of information available to the public concerning the placement of Fannie Mae and Freddie Mac into conservatorship.  In addition, the submitted evidence demonstrated that McKinley's interest in the requested records was to obtain information and share it with the public as part of his scholarship.  McKinley indisputably is the type of FOIA requester that Congress contemplated when it sought to lower the often insurmountable barriers presented by court costs and attorneys' fees to the average person.  Therefore, the factors for entitlement weigh heavily in favor of an award of fees.

## ARGUMENT

### I.     Standard of Review.

District court decisions on motions for attorneys' fees are reviewed for abuse of discretion.  *Brayton v. Office of the U.S. Trade Representative*, 641 F.3d 521,

10

524 (D.C. Cir. 2011). "A district court abuses its discretion if it did not apply the correct legal standard or if it misapprehended the underlying substantive law." *Id.* (internal citations omitted). In addition, whether the district court applied the correct legal standard is examined *de novo*. *Id.*

## II.    McKinley Is Eligible for and Entitled to an Award of Attorneys' Fees and Other Litigation Costs.

FOIA allows for an award of attorneys' fees and other litigation costs to a prevailing plaintiff for two purposes: (1) "to encourage Freedom of Information Act suits that benefit the public interest" and (2) to serve "as compensation for enduring an agency's unreasonable obduracy in refusing to comply with the Freedom of Information Act's requirements." *LaSalle Extension University v. Federal Trade Commission*, 627 F.2d 481, 484 (D.C. Cir. 1980). To obtain an award, the requestor must demonstrate that (1) he has "substantially prevailed" and is thus eligible for an award; and (2) he is entitled to an award under a balancing of relevant factors. *See Brayton*, 641 F.3d at 524; *see also Oil, Chemical and Atomic Workers International Union v. Department of Energy*, 288 F.3d 452 (D.C. Cir. 2002).

### A.    McKinley is eligible for an award of attorneys' fees and other litigation costs.

First and foremost, it is a well-established precedent of this Court that a district court must first determine whether a plaintiff is eligible for an award of

11

attorneys' fees before it determines whether a plaintiff is entitled to such an award. *See Brayton*, 641 F.3d at 524-525; *see also Edmonds v. Federal Bureau of Investigation*, 417 F.3d 1319, 1327 (D.C. Cir. 2005). Yet, the District Court failed to determine McKinley's eligibility before it determined his entitlement to an award.

Based on the plain language of the ruling, the District Court only opined on McKinley's eligibility. Fees Order at 6 (JA 39) ("Given the court's careful balance of relevant factors, ***the court finds that regardless of plaintiff's doubtful eligibility***, Plaintiff is not entitled to receive an award of fees and costs." (emphasis added)). By not first determining McKinley's eligibility for an award of attorneys' fees, the District Court "did not apply the correct legal standard" or "misapprehended" well-established precedent. *Brayton*, 641 F.3d at 524.

Second, even if the District Court's casual consideration of McKinley's eligibility could be interpreted as a finding, the District Court did not apply the correct legal standard. The District Court stated, "While FHFA did turn over additional pages (or sections of documents) pursuant to a court order, the court has serious doubts as to whether this amounts to 'substantially' prevailing." Fees Order at 4 (JA 37). The court's analysis is simply incorrect.

Under the plain language of the statute, a FOIA requester has substantially prevailed if he has obtained relief through a "judicial order." 5 U.S.C. §

12

552(a)(4)(E)(ii)(II).  In addition, this Court has squarely held that the scope of

ordered relief is irrelevant to the determination of whether the FOIA requester has

"substantially prevailed."  *Edmonds*, 417 F.2d at 1327 (holding that the degree of

the plaintiff's success in relation to the other goals of the lawsuit is not a factor

critical to eligibility for a fee award at all).  In other words, to be eligible for an

award of attorneys' fees the FOIA requester only needs to demonstrate that he

obtained court-ordered relief.

There is no doubt that McKinley obtained relief through a judicial order.  In

its August 26, 2011 Order, the District Court ordered "that, by no later than

September 5, 2011, defendant shall identify and disclose to plaintiff any portion of

Document [Numbers] 2 and 3 that is reasonably segregable from the material

therein that is protected by the deliberative process."  August 26, 2011 Order at 2

(JA 15).  Subsequently, pursuant to the court's order, FHFA released previously-

withheld material contained in the two documents.  In other words, as required by

the District Court, FHFA "performed a segregability analysis and released to

Plaintiff all reasonably segregable non-privileged information from the two

contested documents."  September 16, 2011 Joint Status Report at 1 (JA 18).

In sum, the court "did not apply the correct legal standard" or

"misapprehended" well-established precedent.  *Brayton*, 641 F.3d at 524.  Based

on the plain meaning of the statute and the well-established precedent of this

13

Court, McKinley substantially prevailed because the District Court ordered FHFA

to produce records, and McKinley, therefore, is eligible for an award of attorneys'

fees.

> **B.      McKinley is entitled to an award of attorneys'
>            fees and other litigation costs.**

The District Court also did not apply the correct legal standard when it

determined that McKinley was not entitled to an award of attorneys' fees and other

litigation costs.  To determine whether a requester is entitled to an award, a court

must consider the following four factors: "(1) the public benefit derived from the

case; (2) the commercial benefit to the plaintiff; (3) the nature of the plaintiff's

interest in the records; and (4) whether the Government had a reasonable basis for

withholding requested information."  *Burka v. U.S. Department of Health &

Human Services*, 142 F.3d 1286, 1288 (D.C. Cir. 1998) (internal citations and

quotations omitted).  In addition, this Court has held, "No one factor is dispositive,

although the court will not assess fees when the agency has demonstrated that it

had a lawful right to withhold disclosure."  *Davy v. Central Intelligence Agency*,

550 F.3d 1155, 1159 (D.C. Cir. 2008).

The first factor assesses the public benefit derived from the litigation and

requires consideration of both the effect of the litigation and the potential public

value of the information sought.  *Davy*, 550 F.3d at 1159.  To assess the public

benefit, a court must determine whether the FOIA requester's success is "likely to

14

add to the fund of information that citizens may use in making vital political

choices." *Cotton v. Heyman,* 63 F.3d 1115, 1120 (D.C.Cir.1995) (*quoting Blue v.*

*Bureau of Prisons*, 570 F.2d 529, 534 (5th Cir. 1978)).

It is indisputable that the information released pursuant to the District

Court's August 26, 2011 Order was not previously available to the public.  Fees

Order at 4 (JA 37).  Nor is it disputed that the portions of the two records produced

pursuant to the Court's August 26, 2011 Order added to the fund of information

available to the public about the decision to place Fannie Mae and Freddie Mac

into conservatorship.  *Id.*  Nor is it disputed that McKinley disseminated the

information to the public.  *Id.*  Nevertheless, the District Court stated that it was

"not persuaded" that these revelations "yielded any discernible public benefit."  *Id.*

The District Court abused its discretion because McKinley clearly

demonstrated that the additional information produced as a result of this lawsuit

added to the fund of information available to the public about what factors the

government analyzed when making its decision to place Fannie Mae and Freddie

Mac into conservatorship.  For example, although FHFA had the statutory

authority to place Fannie Mae and Freddie Mac under a consent order under

various grounds (*see generally* 12 U.S.C. § 4617), the previously withheld portions

of Document Number 2 reveal that FHFA based its decision solely on the "unsafe

and unsound practices" ground.  This information is of great interest because it was

15

not previously disclosed and remains relevant as FHFA may ultimately place Fannie Mae and Freddie Mac under such an order.  Additionally, the public has been made aware, by the production of Document Number 2, that one of the factors the government weighed when deciding how to prevent a financial catastrophe was "public perception" and that the government thought the receivership option would be "Labor Intensive."

Similarly, with respect to Document Number 3, one of the portions of the record produced pursuant to the Court's August 26, 2011 Order reveals that the government analyzed the situation and its potential impact only three weeks before Fannie Mae and Freddie Mac were placed in conservatorship.  Clearly the produced portions shed light on how the government made one of the most important policy decisions of the financial crisis, especially given the lack of publicly available information on Defendant's decision to place Fannie Mae and Freddie Mac into conservatorship.

The District Court ignored the record before it and abused its discretion. McKinley adequately demonstrated that the released information was not previously available to the public and that it was important new information about how the government made its decision to place Fannie Mae and Freddie Mac into conservatorship.  For that reason, the District Court erroneously determined that the first entitlement factor did not favor McKinley.

The second and third factors – whether a FOIA requester will derive commercial benefit from disclosure and the nature of the requester's interests in the records – are closely related and typically considered together. *Cotton*, 63 F.3d at 1120. The District Court found that these factors "neither strongly support[ed] an award of fees and costs nor counsel[ed] against it." Fees Order at 5 (JA 38). The court based its finding on the sole fact that "because the information was arguably relevant to Plaintiff's work as a regulatory policy expert, he had a commercial motive to obtain disclosure and likewise benefitted from being the individual to do so." *Id*. Based on the well-established precedent of this Circuit, this finding was based on an inappropriate consideration and was clearly an erroneous finding of fact. *Davy*, 550 F.3d at 1160.

In *Davy*, the plaintiff utilized the requested records to conduct research for a book that was subsequently published. In that case, this Court held that such a use of records was not "purely commercial" in nature and, instead, that the plaintiff had engaged in "activities [that] often aim to ferret out and make public worthwhile, previously unknown government information – precisely the activity that FOIA's fees provision seeks to promote." *Id*. at 1160. Similarly, McKinley's objective in this litigation was to obtain "information under FOIA about what the government was up to" with respect to placing Fannie Mae and

17

Freddie Mac into conservatorship and to share such information "with the public as part of his scholarship or news gathering role." *Id*. at 1162.

Similarly, this Court described the plaintiff in *Davy* as "much like a journalist who gather[ed] information of potential interest to a segment of the public, uses his editorial skills to turn the raw materials into a distinct work, and distributes that work to an audience." *Id*. In addition, the Court concluded that the plaintiff was "the quintessential average person [who requested] information under FOIA about what the government was up to" and sought to share that information "with the public as part of his scholarship or news gathering role rather than merely to promote his private commercial interests." *Id*. With respect to the information sought in this case, McKinley was no different than the plaintiff in *Davy*. Because the record provides no basis to doubt that McKinley's purpose in filing the FOIA request and pursuing litigation was to increase the public fund of knowledge about a matter of public concern, the District Court abused its discretion in determining that the second and third factors "do little to advance Plaintiff's position." *Id*.

In analyzing the fourth factor, courts must determine "whether the agency has shown that it had any colorable or reasonable basis for not disclosing the material until after" plaintiff filed suit. *Davy*, 550 F.3d at 1162. McKinley does not dispute that FHFA had a colorable or reasonable basis for withholding the

information.  However, the District Court abused its discretion when it found that

the fourth factor "strongly favor[ed] against awarding fees and costs" to McKinley.

Opinion at 6 (JA 39).  The fourth factor is only one factor of the entitlement

analysis and should not be given any greater weight than the other three factors.

*Cuneo v. Rumsfeld*, 553 F.2d 1360, 1366 (D.C. Cir. 1977) ("Of course the

reasonableness of the government's opposition does not preclude a recovery of

costs and attorney fees.  It is but one aspect of the decision left to the discretion of

the trial court.").  The court erroneously gave the fourth factor too much weight in

its analysis.  Because the first three factors clearly favored an award of attorneys'

fees, the District Court abused its discretion by finding that McKinley was not

entitled to an award of attorneys' fees and other litigation costs.

## CONCLUSION

As is evident from the record below, McKinley "is the type of requester

Congress contemplated when it sought to lower the often insurmountable barriers

presented by court costs and attorney fees to the average person requesting

information under the FOIA."  *Davy*, 550 F.3d at 1163.  The District Court clearly

ordered FHFA to produce information responsive to McKinley's FOIA request.

The produced information was new and added to the fund of information available

to the public concerning the placement of Fannie Mae and Freddie Mac into

conservatorship.  In addition, the record shows that McKinley's interest was to

19

obtain information and share it with the public as part of his scholarship.  The

District Court therefore abused its discretion by finding that McKinley was not

eligible for or entitled to an award of attorneys' fees and other litigation costs.

For the foregoing reasons, McKinley respectfully requests that this Court

reverse the District Court's order denying McKinley's Motion for Attorneys' Fees

and Other Litigation Costs and remand for further proceedings.

Dated:  December 6, 2012                    Respectfully submitted,

                                            /s/ Michael Bekesha
                                            Michael Bekesha
                                            JUDICIAL WATCH, INC.
                                            425 Third Street, S.W., Suite 800
                                            Washington, DC  20024
                                            (202) 646-5172

                                            *Counsel for Plaintiff-Appellant*

## CERTIFICATE OF COMPLIANCE

The undersigned certifies that this brief complies with the type-volume limitations of Fed. R. App. P. 32(a)(7). The brief, excluding exempted portions, contains 4,374 words (using Microsoft Word 2010), and has been prepared in a proportional Times New Roman, 14-point font.

/s/ Michael Bekesha

21

## CERTIFICATE OF SERVICE

I hereby certify that on this 6th day of December 2012, I filed via the CM/ECF system the foregoing **BRIEF OF APPELLANT VERN MCKINLEY** with the Clerk of the Court. Participants in the case are registered CM/ECF users and service will be accomplished by the Appellate CM/ECF system.

I also certify that I caused eight copies to be delivered to the Clerk of Court via hand delivery.

_/s/ Michael Bekesha_